UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| CARY VANDENAVOND, an Individual, ) <br> ) <br>     Petitioner/Counter Respondent, ) <br> ) <br> VS. ) <br> ) <br> i2 TECHNOLOGIES, INC., a Delaware ) <br> Corporation, ) <br> ) <br>     Respondent/Counter Claimant. ) | CIVIL ACTION NO. <br><br> 3:08-CV-1000-G <br><br> **ECF** |

## MEMORANDUM OPINION AND ORDER

Before the court is the motion of the respondent, i2 Technologies, Inc. ("i2" or "the respondent"), to vacate or, alternatively, modify an arbitration award. For the reasons discussed below, the motion to vacate is denied, and the counter-motion to confirm the award is granted.

### I. BACKGROUND

The respondent, i2, is a Delaware corporation that develops, licenses, and implements computer software. Motion to Vacate or, Alternatively, Modify Arbitration Award ("Motion to Vacate or Modify") at 3. The petitioner, Cary

VandenAvond ("VandenAvond" or "the petitioner"), joined i2 in 1997 as an account manager. *Id.* In July of 2005, i2 promoted VandenAvond to Vice President. *Id.* VandenAvond is currently i2's Vice President of Sales and Marketing of the Manufacturing and Industry Sector. *Id.* at 4. The dispute between these two parties developed in late 2005 to early 2006. Petitioner Cary VandenAvond's Response to Respondent i2 Technologies, Inc.'s Motion to Vacate or, Alternatively, Modify Arbitration Award and Claimant's Counter Motion to Confirm the Award ("Response") at 2-5. During this time, VandenAvond performed services for i2 which he argues entitled him to a sales commission pursuant to the terms of his 2005 Account Manager Compensation Plan ("the Compensation Plan"). *Id.* at 2-3. i2 argued that the terms of the Compensation Plan did not allow VandenAvond to recover a commission. *Id.* at 5. The parties took their dispute to an arbitrator who awarded VandenAvond a $1,000,000 commission. *Id.* at 8. i2 now seeks to vacate the arbitration award. Motion to Vacate or Modify at 3.

A more detailed review of the facts giving rise to the underlying dispute that led to arbitration is useful. In 2002, i2 entered into an agreement with EDS, in which i2 agreed to provide EDS, over time, with $30 million worth of licenses and software. Response at 2. The agreement gave EDS the right to resell i2's software licenses to its customers. Motion to Vacate or Modify at 4. i2 recognized the value of this contract as current income in 2000 and 2001. Response at 2. Later, i2

discovered that by recognizing the revenue early, it had violated generally accepted accounting principles. *Id.* As a result, i2 reclassified the money as deferred contract revenue. *Id.* Between 2002 and 2005, VandenAvond sold software to EDS in an effort to "burn down" the deferred revenue, *i.e.*, to convert the deferred revenue into current revenue. *Id.* at 3. By 2005, the deferred revenue remaining from i2's original contract with EDS was $23.2 million. *Id.* Throughout 2005, VandenAvond worked to "burn down" the remaining deferred revenue. *Id.* at 3-4. Overall, VandenAvond claims he was responsible for "burning down" approximately $23.3 million of the deferred revenue. *Id.* at 5. When he submitted his claim for a commission, management deliberated for over a month before telling VandenAvond that i2 would not pay him a commission. *Id.* On March 10, 2006, VandenAvond filed an arbitration demand, seeking a $2,732,275.00 sales commission. Motion to Vacate or Modify at 6.

VandenAvond's demand for arbitration lists two claims: breach of contract and violation of the Michigan Sales Commission Act. Appendix to Respondent i2 Technologies, Inc's Motion to Vacate or, Alternatively, Modify Arbitration Award and Brief in Support ("Appendix to Motion to Vacate or Modify") at APP00010-11. The contract VandenAvond refers to is the Compensation Plan. VandenAvond refers to several sections of the Compensation Plan by name, and quotes relevant excerpts.

*Id.* at APP0004-09.  The breach of contract claim is not expressly predicated, however, on the violation of any one section of the contract.

i2 nonetheless contends that VandenAvond's breach of contract claim revolved around § 1.15.1 of the Rules of Engagement of the Compensation Plan("the ROE"). Motion to Vacate or Modify at 6-8.  According to i2, VandenAvond only argued he was entitled to the commission under § 1.15.1.  *Id.*  i2 asserts that VandenAvond never argued the commission qualified as a "flex-deal" under § 1.16.1 of the ROE.  *Id.* at 7.  Moreover, i2 argues, the arbitrator assured both parties that he was "committed to providing the parties with an opportunity to respond to any new issues raised because he disliked it when arbitrators ruled on grounds not raised and that no one had an opportunity to address." *Id.* at 8.  As further proof that the arbitrator did not intend to examine whether the commission qualified as a flex-deal, i2 asserts that the arbitrator submitted a list of questions to the parties, none of which asked about, mentioned, or alluded to flex-deals.  *Id*. at 9.  For all these reasons, i2 was confident that the arbitrator would not inquire into whether the commission qualified as a flex-deal.  As a result, i2 never contended that the commission did *not* qualify as a flex-deal.

On May 28, 2008, the parties received the arbitrator's award.  *Id.* at 9.  The arbitrator rejected VandenAvond's claim for $2,732,275.00 and instead awarded him $1,000,000 on the grounds that the commission constituted a flex-deal under

§ 1.16.1 of the ROE. *Id*. According to that section, a flex-deal is a special type of deal in which "the license addendum is priced in consideration for software to be selected by the customer from a fixed list of products in a finite period of time." *Id.* at 9-10. A flex-deal requires a signed license agreement, as well as special approval by i2's Chief Executive Officer, before the deal is bid or proposed in any way. *Id.* at 10. The arbitrator found that all these requirements were met. i2 now contends that such a finding exceeded the arbitrator's authority because the parties did not ask the arbitrator to consider whether the commission qualified as a flex-deal.

## II. ANALYSIS

### A. Standard for Vacating or Modifying Arbitration Awards

Congress has provided by statute the only grounds for vacating or modifying an arbitration award. According to 9 U.S.C. § 10(a), a district court may vacate an arbitration award in any of the following cases:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or

> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made.

Additionally, 9 U.S.C. § 11 provides that a district court may modify or correct an arbitration award in the following cases:

> (a) Where there was an evident material miscalculation of figures or an evident material mistake in the description of any person, thing, or property referred to in the award
>
> (b) Where the arbitrators have awarded upon a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted
>
> (c) Where the award is imperfect in matter of form not affecting the merits of the controversy.

In deciding whether one of the above situations meriting vacatur or modification of an arbitration award exists, the court must remember that judicial review of an arbitration award is "exceedingly deferential." *American Laser Vision, P.A. v. Laser Vision Institute, L.L.C.*, 487 F.3d 255, 258 (5th Cir. 2007) (citing *Kergosien v. Ocean Energy, Inc.*, 390 F.3d 346, 352 (5th Cir. 2004)). Vacatur is available "only on very narrow grounds," and federal courts must "defer to the arbitrator's decision when possible." See *id.* (citing *Brabham v. A.G. Edwards & Sons Inc.*, 376 F.3d 377, 380 (5th Cir. 2004)). In fact, the Supreme Court recently reemphasized the narrowness of the available grounds for vacatur. See *Hall Street Associates, L.L.C. v. Mattel, Inc.*, \_\_ U.S. \_\_, 128 S.Ct. 1396, 1400 (2008) ( holding that the statutory bases for vacatur under the FAA are exclusive). Even before *Hall Street*, the Fifth Circuit had fleshed

out the very narrow standard of review, stating that an award must be upheld as long as it "is rationally inferable from the letter or purpose of the underlying agreement." See *American Laser Vision*, 487 F.3d at 258 (citing *Nauru Phosphate Royalties, Inc. v. Drago Daic Interests, Inc.*, 138 F.3d 160, 164-65 (5th Cir. 1998)). Even "the failure of an arbitrator to correctly apply the law is not a basis for setting aside an arbitrator's award." See *id*. (citing *Kergosien*, 390 F.3d at 356).

Additionally, courts are not permitted to weigh the merits of the grievance or consider whether there is equity in a particular claim. *Kergosien*, 390 F.3d at 358. An arbitrator's factual findings "are unreviewable." *Apache Bohai Corporation LDC v. Texaco China BV*, 480 F.3d 397, 407 (5th Cir. 2007). Courts must accept arbitrators' factual findings as true. *Id.* at 409. The Supreme Court has stated that "[w]hen an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award." *Major League Baseball Players Association v. Garvey*, 532 U.S. 504, 509 (2001). In short, courts are "not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Kergosien*, 390 F.3d at 357. "Even 'serious error' on the arbitrator's part does not justify overturning his decision, where, . . . he is construing a contract and acting within the scope of his authority." *Kergosien*, 390 F.3d at 358 (quoting *Major League Baseball*, 532 U.S. at

510). All the law requires is that the award is "in some logical way . . . derived from the wording or purpose of the contract." *Kergosien*, 390 F.3d at 353.

B. <u>The Arbitrator did not Exceed his Authority</u>

According to i2, the parties never asked the arbitrator to consider § 1.16.1 of the ROE, the section of the contract on which he based his award. i2 contends that throughout the discovery process and the arbitration, VandenAvond referenced § 1.15.1 of the ROE repeatedly, but never claimed that the commission qualified as a "flex deal" under § 1.16.1. In support of this assertion, i2 points to VandenAvond's deposition, during which he stated, "You asked me where in the contract I would base my position on . . . and I pointed to [§ 1.15.1] . . . [t]hat's my position." Motion to Vacate or Modify at 7. Statements such as these, in conjunction with the arbitrator's never mentioning § 1.16.1, leads i2 to argue that the arbitrator had no authority to rule based on § 1.16.1. According to i2, this court must vacate the ruling under 9 U.S.C. § 10(a)(4) and 9 U.S.C. § 11(b).

No court has yet addressed the question of whether an arbitrator can base his decision in a breach of contract case on a section of the contract that was not specifically referenced in the parties' briefs or during the arbitration. There are, however, helpful analogous cases. In *Rosati v. Bekhor*, 167 F. Supp. 2d 1340 (M. D. Fla. 2001), the plaintiff alleged, *inter alia*, that the defendants had violated Rule 10b-5 promulgated pursuant to the Securities Exchange Act. *Rosati*, 167 F. Supp. 2d at

1343.  The arbitrators held, however, that the defendants had violated Florida Statutes Sections 517.211 and 517.301, statutes that were not raised during the arbitration.  *Id.* at 1345.  The defendants sought to vacate the award, arguing that the arbitrators exceeded their powers by ruling on a claim not submitted to them.  *Id.*  The court refused to vacate, reasoning that "the general *issue* submitted to the arbitration panel was securities fraud."  *Id.* (emphasis in original).  Although "the specific law mentioned in the Award was not submitted to the arbitrators, the issue of securities fraud was submitted."  *Id.*  The court stated that under 9 U.S.C. § 11, modification is proper only if "the arbitrators decide *matters* not submitted to them."  *Id*. (emphasis in original).  In other words, since the broad "matter" of securities fraud was submitted, the arbitrators were free to hold the defendants liable for the violation of any law prohibiting securities fraud.  Here, the parties submitted a contract to the arbitrator and asked him to determine whether i2 had breached it.  That was the "matter" or "issue" before the arbitrator.  Although the parties never argued over the specific provision on which the arbitrator based his ruling, that provision was part of the matter or issue -- the contract -- put before the arbitrator for consideration.

The language of *Kergosien* supports this broad interpretation of the word "matter."  There, the Fifth Circuit held that, when considering whether an arbitrator has exceeded his authority in ruling upon a matter not submitted to him,[1] the only

---

[1] In *Kergosien*, the employer moved to vacate the arbitration award on
(continued...)

question the court is permitted to ask is "whether the award, however arrived at, is rationally inferable from the contract."[2] *Kergosien*, 390 F.3d at 353-54 (quoting *Anderman/Smith Operating Company v. Tennessee Gas Pipeline Company*, 918 F.2d 1215, 1219 n. 3 (5th Cir. 1990)). This language from *Kergosian* suggests that the court should uphold the arbitration award, "however arrived at," so long as the arbitrator could rationally infer from his source of authority -- here, the contract and the submissions and argument of the parties -- that the award was proper. So long as the arbitrator could rationally have made such an inference, the award is said to "draw its essence" from the arbitrator's authority. *Id.* at 353. If the award can pass this "essence test," it must be upheld. *Id.*

---

[1](...continued)
grounds that, *inter alia*, "the arbitrator wrongly took up the breach of fiduciary claim" and "exceeded his powers by reviewing the merits of the [ERISA] Plan and its amendments." 390 F.3d at 352. The district court agreed with the employer but was reversed by the Court of Appeals.

[2]     The "contract" this language refers to is the agreement between the parties to submit the dispute to arbitration. Typically, courts would look to such an agreement in order to determine whether the arbitrator had exceeded his authority. Here, however, the parties do not argue that the arbitration clause in the Compensation Plan did not grant the arbitrator authority to decide whether the contract had been breached. Instead, i2 merely argues that the arbitrator relied on language within that contract that the parties never referenced. In other words, the source of authority i2 contends the arbitrator exceeded is the submissions and argument of the parties. Thus, instead of asking whether the arbitrator made an award rationally inferable from the arbitration clause, i2 insists that this court must ask whether the arbitrator could have rationally inferred, from the submissions and argument of the parties, that an award based on § 1.16.1 is permissible.

The arbitrator here could have rationally inferred that he had the power to rule based upon § 1.16.1 of the ROE. There is no indication that the parties requested that the arbitrator only examine § 1.15.1 of the ROE. Although § 1.16.1 never came up during the arbitration, § 1.15.1 was only referenced four times throughout the arbitration. Appendix to Motion to Vacate or Modify at APP00448, APP00535-36, APP00562, APP00640. More importantly, each time § 1.15.1 *was* referenced, that reference was made by the attorneys for i2. Vandenavond only referred to § 1.15.1 in response to direct questions about it. Thus, if there was any emphasis on § 1.15.1 during the arbitration, it occurred only as the result of i2's efforts. VandenAvond never restricted the dispute to the interpretation of § 1.15.1. The court cannot vacate the arbitration award merely because i2 focused on one particular section of the contract. It was reasonable, and certainly rational, for the arbitrator to infer from all the materials submitted, which included the entire ROE, that he could rest his decision on a different section than the one i2 emphasized.

The court in *Rosati* confirmed an arbitration award based on an entirely different statute than the one the claimants alleged had been violated. *Rosati*, 167 F. Supp. 2d at 1346. This court neither accepts nor rejects that exact holding; to do so is unnecessary here. Such a finding is in keeping, however, with the wide latitude given to arbitrators under Fifth Circuit precedent. The court finds *Rosati* persuasive

and holds that the arbitrator did not exceed his authority by basing his award on a section of the contract to which the parties never specifically referred.

### III. CONCLUSION

For the reasons discussed above, the respondent's motion to vacate the arbitration award is **DENIED**, and petitioner's counter-motion to confirm the award is **GRANTED**. Within ten days of this date, counsel for the petitioner shall submit a proposed form of judgment in conformity with the memorandum opinion and order.

**SO ORDERED**.

December 19, 2008.

*A. Joe Fish*
**A. JOE FISH**
**Senior United States District Judge**